IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

PITTSBURGH

| | |
|---|---|
| BARBARA ANN THOMPKINS, INDIVIDUALLY; AND ERIC KLAVON, HER HUSBAND;<br><br>Plaintiffs,<br><br>vs.<br><br>SPC DAVID KLOBUCHER,<br><br>Defendant, | 2:21-CV-00320-CRE |

### MEMORANDUM OPINION[1]

Cynthia Reed Eddy, Chief United States Magistrate Judge.

This civil action was initiated in this court on March 9, 2021, by husband-and-wife Plaintiffs Eric Klavon and Barbara Ann Thompkins, to recover damages for injuries allegedly caused by two police officers, Defendants Alyssa Finnigan and David Klobucher, as well as the Municipality of Penn Hills and the Penn Hills Police Department. Plaintiffs claim that Defendants violated their civil rights pursuant to 42 U.S.C. § 1983, as well as committed various state law torts, for their purported use of excessive force during the course of Thompkins's arrest. *See* Compl. (ECF No. 1). This court has subject matter jurisdiction over the controversy pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties have voluntarily consented to have a United States Magistrate Judge conduct proceedings in this case, including trial and the entry of a final judgment. (ECF Nos. 10-11).

Presently before the court is a motion for summary judgment filed by the sole remaining defendant, Klobucher, pursuant to Federal Rule of Civil Procedure 56.[2] (ECF No. 30). In addition, Plaintiffs have filed a motion to strike Defendant's expert report. (ECF No. 29). For the reasons that follow, this court grants in part and denies in part Defendant's motion for summary judgment and defers Plaintiffs' motion to strike at this time.

I. **BACKGROUND**

The underlying facts of this matter are generally undisputed.[3] "On June 3, 2020, Penn Hills Police officers were dispatched to 240 Datura Drive, Penn Hills, Pennsylvania in response to a domestic violence call by county dispatch." Def.'s CSMF (ECF No. 32) at ¶ 1. "This dispatch was in response to a 911 call by [Plaintiff] Klavon, in which he reported that his wife[, Plaintiff Thompkins,] punched him in the face and was acting erratic[ally]." Id. at ¶ 2. Both Officers Klobucher and Finnigan responded, and "[a]ll interactions at issue … were captured on bodycam video."[4] Id. at ¶ 3. "Officer Klobucher arrived first at the location, where he was met by [] Klavon standing in the front yard." Id. at ¶ 5. "At the scene, [] Klavon reported to Officer Klobucher that his wife, [] Thompkins, had punched him in the face."[5] Id. at ¶ 6. Officer Klobucher indicated he

---

[2] On February 21, 2022, this Court approved the stipulation filed by all parties dismissing all claims with prejudice against all other Defendants: Finnigan, the Municipality of Penn Hills, and the Penn Hills Police Department. (ECF No. 28).

[3] Unless otherwise noted, these facts are admitted. See Pl.'s Resp. to Def.'s Concise Statement of Material Fact ("CSMF") (ECF No. 36).

[4] This video has been reviewed by this Court. See Video Exhibits (ECF No. 33) at 2, 3, 10, and 11. See Diaz v. Aberts, 2013 WL 420349, at *5 (E.D. Pa. Feb. 4, 2013) ("[I]n cases where the pertinent events are captured on video, courts should not rely merely on the parties characterizations of the events but rather should view the facts as they are depicted by the videotape.").

[5] Klavon showed Klobucher a small injury on the left side of his upper lip.

intended to arrest Thompkins, and he "then proceeded toward the house."[6] *Id*. at ¶ 9. "Thompkins was inside the home and gave Officer Klobucher permission to enter the house." *Id*. at ¶ 10. Officer Finnigan then arrived, and the officers asked Thompkins what happened. "Thompkins freely told Officer Klobucher that she punched her husband in the mouth."[7] *Id*. at ¶ 15. Officer Klobucher responded, "That sounds pretty simple. Stand up."[8] Video (ECF No. 33) at Ex. 10. Thompkins immediately stood up. Then, Officer Klobucher stated, "you're under arrest," while at the same time reaching with both of his arms[9] and grabbing onto Thompkins's right arm in an effort to place it behind her back to get her into handcuffs.

The bodycam videos of Klobucher and Finnigan clearly and accurately depict the events that led from this point to Thompkins's broken arm. The video shows that Thompkins immediately started screaming, "No," along with other expletives. Klobucher testified that he "then manipulated her arm and pushed her up towards and onto a wall." Def.'s Depo. (ECF No. 33-5) at 53. A scuffle ensued, and then Klobucher "took [Thompkins] down face-first onto the ground." *Id*. at 54. Specifically, Klobucher testified that he "had control of her right arm with [his] left arm and [he] grabbed her hair with [his] other arm … and pulled her to the ground, pushed her to the ground."[10] *Id*. at 55. At her deposition, Thompkins testified that after she yelled "no," "they just

---

[6] Klobucher testified that it is a policy that arrest is required where "there is a domestic violence complaint that is corroborated by a physical injury." Def.'s CSMF (ECF No. 32) at ¶ 71.

[7] Additionally, Thompkins told Klobucher that Klavon was "drinking" and called her a "n***** b****."

[8] Thompkins was calmly sitting on the steps immediately inside the house, while Officer Klobucher was standing on her right side about an arm's distance away.

[9] Klobucher acknowledges that he "placed his hand on her wrist." Def.'s CSMF (ECF No. 32) at ¶ 16. In addition, the video is clear that Klobucher placed his other hand on Thompkins's upper arm.

[10] According to Klobucher, the "hair-pull" is a "very effective" technique for someone resisting

grabbed [her], and they threw [her] up against the wall." Pl.'s Depo. (ECF No. 33-4) at 34.  She testified that after they "threw [her] on the floor, [she] said you're hurting my arm, and he just kept twisting till it snapped, and [she] screamed, and [she] said you just broke my arm, and [Klobucher] didn't stop." *Id*. at 36.

At his deposition, Klobucher testified that "the technique he utilized to gain control of [] Thompkins['s] hands to be a 'Kimura hold,' a mixed-martial arts technique." Def.'s CSMF (ECF No. 32) at ¶ 57.  Klobucher testified that a Kimura "is a manipulation more of the shoulder joint." Def.'s Depo. (ECF No. 33-5) at 29.   Klobucher testified that the Kimura is "an effective handcuffing technique." *Id*. at 31.  When applying this technique, Klobucher does not release the hold until he knows that he has control. *Id*. at 33.  During training, he knows when to stop in order to prevent injury. *Id*.  During the course of the arrest, once Thompkins was on the ground, he "began twisting her arm behind her back." *Id*. at 57.  He then "placed [his] knee on her upper back" for a few seconds until the handcuffs were placed by Finnigan. *Id*. at 58.

"Once the handcuffs were applied to Ms. Thompkins," Ms. Thompkins stated that they broke her arm, and eventually was returned to a standing position.[11] Def.'s CSMF (ECF No. 32) at ¶ 27.  Ms. Thompkins again stated, "My arm is broken."  Thompkins continued to complain of arm pain.  The officers assessed Thompkins and concluded she did not present a medical emergency. *Id*. at ¶ 31.  The officers "transported [] Thompkins to the Penn Hills Police Station,

---

arrest. Def.'s Depo. (ECF No. 33-5) at 55.  Thompkins was wearing a wig, so Klobucher actually just pulled Thompkins's wig from her head.

[11] Defendant characterizes Officer Klobucher as "assisting" Thompkins to a standing position, while Plaintiffs state that Officer Klobucher "lifted [her] up by her injured arm." Def.'s CSMF (ECF No. 32) at ¶ 27; Pls.' Resp. (ECF No. 36) at ¶ 27.  In either event, because Thompkins's arms were handcuffed behind her back, she would not have been unable to return to a standing position on her own.

4

which transportation took a matter of a few minutes." *Id*. at ¶ 32.  Officer Klobucher asked EMS staff to evaluate Thompkins while she was at the police station. *Id*. at ¶ 34.  "EMS staff recommended that Ms. Thompkins be transported to the hospital for further evaluation due to her subjective complaints of pain." *Id*. at ¶ 36.  At the hospital, the physician examined Ms. Thompkins and ordered x-rays. *Id*. at ¶ 39.  The x-rays revealed a fracture. She "was discharged from the hospital that evening, with directions to follow up with an orthopedic doctor, which she did approximately five days later." *Id*. at ¶ 40.  Ms. Thompkins "underwent successful open reduction internal fixation surgery to repair her fractured right humerus at UPMC Presbyterian on June 12, 2020."[12] First Amended Complaint ("FAC") (ECF No. 6) at ¶ 46.

On March 9, 2021, Plaintiffs instituted the instant action, and on May 10, 2021, Defendants filed an Answer. (ECF Nos. 1, 7).  The parties engaged in the discovery process.  During the course of discovery, the parties disagreed about the use of expert testimony regarding the use of force in this matter, and this Court permitted the parties to file motions to strike experts along with motions for summary judgment.  Thus, on March 14, 2022, Defendant filed a motion for summary judgment, and Plaintiffs filed a motion to strike Defendant's expert report. (ECF Nos. 29, 30).  Both parties responded to the motions, and both motions are ripe for disposition. (ECF Nos. 36, 37, 40, 41, and 42).

## II.   STANDARD OF REVIEW

### A.  *Summary Judgment Standard*

Summary judgment is appropriate when the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

---

[12] There is no dispute that Thompkins's injury that led to her broken arm and subsequent surgery was caused by Klobucher during the course of the arrest.

Fed. R. Civ. Pro. 56(a). A genuine issue of material fact is one that could affect the outcome of litigation. *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 643 (3d Cir. 2015) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *N.A.A.C.P. v. North Hudson Reg'l Fire & Rescue*, 665 F.3d 464, 475 (3d Cir. 2011) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The initial burden is on the moving party to adduce evidence illustrating a lack of genuine, triable issues. *Hugh v. Butler Cnty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986)). Once the moving party satisfies its burden, the non-moving party must present sufficient evidence of a genuine issue, in rebuttal. *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015) (citing *Matsushita Elec. Indus. Co.*, 475 U.S. at 587). When considering the parties' arguments, the court is required to view all facts and draw all inferences in the light most favorable to the non-moving party. *Id.* (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)). The benefit of the doubt will be given to allegations of the non-moving party when in conflict with the moving party's claims. *Bialko v. Quaker Oats Co.*, 434 F. App'x 139, 141 n.4 (3d Cir. 2011) (citing *Valhal Corp. v. Sullivan Assocs.*, 44 F.3d 195, 200 (3d Cir. 1995)).

Nonetheless, a well-supported motion for summary judgment will not be defeated where the non-moving party merely reasserts factual allegations contained in the pleadings. *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 252 (3d Cir. 2010) (citing *Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir. 1989)). The non-moving party must resort to affidavits, depositions, admissions, and/or interrogatories to demonstrate the existence of a genuine issue.

6

*Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 773 (3d Cir. 2013) (citing *Celotex Corp.*, 477 U.S. at 324).

**III. DISCUSSION**

   *A. Excessive Force, the Fourth Amendment, and Qualified Immunity*

In this case, Thompkins contends that Officer Klobucher used excessive force against her in violation of her civil rights pursuant to 42 U.S.C. § 1983. *See* FAC (ECF No. 6). "Section 1983 provides a civil remedy for the 'deprivation of any rights, privileges, or immunities secured by the Constitution and laws.'" *Klein v. Madison*, 374 F. Supp. 3d 389, 405 (E.D. Pa. 2019) (quoting 42 U.S.C. § 1983). "To state a claim under section 1983, a plaintiff must demonstrate that some person has deprived him of a federal right...[and] that the person who has deprived him of that right acted under color of state or territorial law." *Id*. (internal citations and quotation marks omitted). "A cause of action exists under § 1983 when a law enforcement officer uses force so excessive that it violates the Fourth and Fourteenth Amendments to the United States Constitution." *Williams v. City of York, Pennsylvania*, 967 F.3d 252, 259 (3d Cir. 2020). It is well settled that all "claims that law enforcement officers have used excessive force ... in the course of an arrest ... should be analyzed under the Fourth Amendment and its 'reasonableness' standard."[13] *Damiani v. Duffy*, 754 F. App'x 142, 146 (3d Cir. 2018) (citing *Graham v. Connor*, 490 U.S. 386, 395 (1989)).

> Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of the nature and quality

---

[13] In the FAC, Thompkins claims violations of her Fourth and Fourteenth Amendment rights due to Officer Klobucher's use of excessive force. However, as cited *supra*, because the use of force occurred in conjunction with an arrest, this court will only consider an excessive force claim pursuant to the Fourth Amendment; thus, summary judgment is granted in favor of Klobucher for Plaintiffs' claims for relief pursuant to the Fourteenth Amendment. *See also Brice v. City of York*, 528 F. Supp. 2d 504, 515 (M.D. Pa. 2007) ("A plaintiff seeking recovery for police conduct during the course of an arrest must predicate recovery upon the Fourth Amendment.").

> of the intrusion on the individual's Fourth Amendment interests against the counexpressvailing governmental interests at stake. An analysis of the reasonableness of an officer's actions requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.

*Damiani*, 754 F. App'x at 146-47 (internal citations and quotation marks omitted). "In evaluating excessive force claims, courts must adopt an officer's on the scene perspective." *Ference v. Twp. of Hamilton*, 538 F. Supp. 2d 785, 804 (D.N.J. 2008) (internal quotation marks omitted).

> The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight ... Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.

*Ference*, 538 F. Supp. 2d at 804 (quoting *Graham*, 490 U.S. at 396-97(citations omitted)) (internal quotation marks omitted). Moreover, in considering excessive force claims, this court notes that this circuit has held that "the presence or absence of physical injury is probative evidence of whether the force used was excessive." *Velius v. Twp. of Hamilton*, 754 F. Supp. 2d 689, 694 (D.N.J. 2010).

Further, where, as here, a videotape of an incident exists that depicts the whole incident in a clear and accurate manner, it is incumbent on the court to determine "the relevant set of facts and draw[] all inferences in favor of the nonmoving party to the extent supportable by the record." *Scott v. Harris*, 550 U.S. 372, 381 at n.8 (2007); *see also Abney v. Younker*, 2019 WL 7812383, at *5 (M.D. Pa. Oct. 3, 2019), report and recommendation adopted, 2020 WL 488894 (M.D. Pa. Jan. 30, 2020) ("[I]n a case such as this, where critical events at issue have been captured on videotape, the Court is obliged to consider that videotaped evidence in determining whether there is any genuine dispute as to material facts.").

> Any assessment of the probative value of video evidence must take into account that the camera, while an immutable witness, can only describe events from the particular perspective of the video's lens. Thus, the camera only allows us to see what the camera observed and recorded, and our assessment of the evidence must be undertaken through the prism of the camera's perspective, subject to all of the vagaries and limitations of that perspective. This fact has led commentators to caution courts to refrain from a reflexive reliance on equivocal video evidence when reaching ultimate legal conclusions. *See* Jessica Silbey, *Cross–Examining Film*, 8 U. Md. L.J. Race, Religion, Gender & Class 17 (2008); Martin A. Schwartz et al., *Analysis of Videotape Evidence in Police Misconduct Cases*, 25 Touro L.Rev. 857 (2009). Moreover, where a video has inherent ambiguities, courts have declined invitations to grant summary judgment based upon that video evidence.

*Abney*, 2019 WL 7812383, at *5.

In this case, Plaintiffs assert that "a reasonable jury could view the force used by [] Klobucher during the arrest of [] Thompkins as excessive" based upon "the video evidence in this case, along with the testimony of [] Officer Klobucher." Pls.' Br. (ECF No. 37) at 3. Defendant asserts that the "video evidence is irrefutable that once [] Klobucher initiated arrest, [] Thompkins screamed, flailed and resisted." Def.'s Br. (ECF No. 31) at 11.  It is Defendant's position that the "force [] Klobucher used to bring her into control and complete the arrest was commensurate with her conduct, and consistent with the directives of the Municipality's Use of Force Policy." *Id*. at 11-12.  Plaintiff responds that Klobucher's "manipulating [] Thompkins'[s] arm behind her back and breaking it clearly constitutes a situation in which a reasonable jury could view the conduct at issue as objectively unreasonable and constituting excessive force." Pl.'s Br. (ECF No. 37) at 3.

To determine whether a constitutional violation occurred, this Court will consider the non-exhaustive factors appropriate in this Circuit in excessive-force cases. *See El v. City of Pittsburgh*, 975 F.3d 327, 336 (3d Cir. 2020) ("We consider factors including 'the severity of the crime at issue, whether the suspect[s] pose[ ] an immediate threat to the safety of the officers or others, and whether [they are] actively resisting arrest or attempting to evade arrest by flight.' *Graham*, 490 U.S. at 396, 109 S.Ct. 1865. We also assess the physical injury to the plaintiff, 'the possibility that

9

the persons subject to the police action are themselves violent or dangerous, the duration of the action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time.' *Sharrar v. Felsing*, 138 F.3d 810, 822 (3d Cir. 1997), abrogated on other grounds, [*Curley v. Klem*, 499 F.3d 199, 209-11 (3d Cir. 2007)].").

Certain factors indicate that the use of force was not excessive. Here, Thompkins was being arrested for an act of domestic violence, specifically simple assault, against her husband. *See* Incident Report (ECF No. 33-1). This Court recognizes that domestic violence is a serious crime, and Thompkins had clearly punched Klavon in the mouth. Moreover, Thompkins indeed was flailing around during the course of a lawful arrest and could have injured one or both officers in the process.[14] The interaction at issue was brief, lasting about 45 seconds from the moment Klobucher grabbed Thompkins's arms until she was handcuffed on the ground.

Other factors, however, indicate the use of force was indeed excessive. Thompkins was grabbed by her arms prior to being told she was under arrest. There were two officers on the scene contending with just one individual, and Officer Klobucher is physically much larger than Thompkins.[15] Further, there is no indication Thompkins was attempting to flee the scene or that she was armed. In addition, Thompkins suffered a severe injury due to the mixed-martial arts hold utilized to handcuff her hands behind her back. Moreover, it does not appear that Thompkins was

---

[14] Although Thompkins was initially charged with resisting arrest, that charge, along with all charges were later withdrawn. Def.'s CSMF (ECF No. 32) at ¶ 51. Moreover, even if Thompkins had been charged with and convicted of resisting arrest, that in and of itself would not preclude this section 1983 excessive-force action. See *Garrison v. Porch*, 376 F. App'x 274, 277 (3d Cir. 2010).

[15] Klobucher is six feet tall and weighs 230 pounds. Pls.' CSMF (ECF No. 36) at ¶ 73.

a threat to the general public in any way, as it was clear this was an incident between husband and wife.  It is also worth noting that at her deposition, Thompkins testified that this incident occurred shortly after the murder of George Floyd,[16] and "she was in panic mode because the world was in an uproar, and [she] didn't have any idea what they were going to do." Pl.'s Depo. (ECF No. 33-4) at 27.  She had "never been arrested" before. *Id*.

Although this incident is clearly depicted on video, there are factual disputes appropriate for a jury to decide.  There is no question that despite Klobucher's testimony, he indeed grabbed her arm prior to letting her know she was under arrest.[17]  It is this act that led to the scuffle that caused her broken arm.  While Thompkins was pinned to the ground, Klobucher utilized a mixed-martial arts technique that he knew could cause injury in order to aid Finnigan in placing the handcuffs onto Thompkins.  This shoulder manipulation, which potentially caused the severe injury, is too subtle to be seen clearly on video, leaving it best for a jury to determine whether its use was excessive under the totality of the circumstances.  Based on the foregoing, there are genuine issues of material fact as to whether a constitutional violation occurred.

However, even where a constitutional violation occurs, a police officer may still be entitled to avoid liability pursuant to the doctrine of qualified immunity. "Qualified immunity protects government officials from liability from civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have

---

[16] "On the evening of May 25, 2020, white Minneapolis police officer Derek Chauvin kills George Floyd, a Black man, by kneeling on his neck for almost 10 minutes. The death, recorded by bystanders, touched off what may have been the largest protest movement in U.S. history and a nationwide reckoning on race and policing." *See* https://www.history.com/this-day-in-history/george-floyd-killed-by-police-officer (last visited 9/14/2022).  Instantly, Thompkins is a mixed-race female, and Klobucher is white.  This incident occurred on June 3, 2020.

[17] At his deposition, Klobucher testified that he "believe[s] [he] told her she was under arrest and then [he] grabbed her." Def.'s Depo. (ECF No. 33-5) at 53.

known." *Guthrie v. Guthrie*, 216 F. Supp. 3d 590, 594 (W.D. Pa. 2016). "It applies to give officers breathing room to make reasonable but mistaken judgment." *Id*. (internal quotation marks omitted). "When properly applied, [qualified immunity] protects all but the plainly incompetent or those who knowingly violate the law." *Id*. "Summary judgment based on qualified immunity should be granted when the law did not put the officer on notice that his conduct would be clearly unlawful." *Id*. at 594-95 (internal quotation marks omitted). "When considering whether a right was clearly established, our focus is on whether the officer had fair notice that [his or] her conduct was unlawful, so reasonableness is judged against the backdrop of the law at the time of the conduct." *El*, 975 F.3d at 334 (internal quotation marks omitted). "Although there need not be a case directly on point for a right to be clearly established, existing precedent must have placed the ... constitutional question beyond debate." *Id*.

> Under our cases, the clearly established right must be defined with specificity. "This Court has repeatedly told courts ... not to define clearly established law at a high level of generality." *Kisela* [*v. Hughes*], 584 U.S., [__] – ––, 138 S.Ct., [1148,] 1152 [(2018)] (internal quotation marks omitted). That is particularly important in excessive force cases, as we have explained:
>
>> "Specificity is especially important in the Fourth Amendment context, where the Court has recognized that it is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts. Use of excessive force is an area of the law in which the result depends very much on the facts of each case, and thus police officers are entitled to qualified immunity unless existing precedent squarely governs the specific facts at issue....
>>
>> "[I]t does not suffice for a court simply to state that an officer may not use unreasonable and excessive force, deny qualified immunity, and then remit the case for a trial on the question of reasonableness. An officer cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Id*., at ––––, 138 S.Ct., at 1153 (quotation altered).

12

*City of Escondido, Cal. v. Emmons*, __ U.S. __, 202 L. Ed. 2d 455, 139 S. Ct. 500, 503 (2019).

Here, Plaintiffs frame the constitutional right, pursuant to *El*, *supra*, "that an unarmed individual who is not suspected of a serious crime—including one who is verbally uncooperative or passively resists the police—has the right not to be subjected to physical force such as being grabbed, dragged, or taken down." *El*, 975 F.3d at 340; Pls.' Br. (ECF No. 37) at 7.  Defendant frames the constitutional right differently, arguing it is not well-established  "that an officer must forego using an arm bar technique to gain control and complete arrest of a domestic assault arrestee who is actively trying to fight off the officers." Def.'s Reply (ECF No. 41) at 2.

In order for Plaintiffs to survive summary judgment, this Court must conclude, "based on relevant precedent at the time, [that] a reasonable officer would not have believed that the level of force used against [plaintiff] was legal under the circumstances." *Couden v. Duffy*, 446 F.3d 483, 497 (3d Cir. 2006).

> The two poles of the analysis are fairly clear: Police may use force, including baton strikes, to subdue a resisting suspect, *Byrd v. Cumberland County*, 2020 WL 3496915 at *11-12 (D.N.J. June 29, 2020); they may not, however, strike a subdued, "handcuffed suspect who is face down and not resisting arrest." *Colon v. City of Paterson*, 2014 WL 4441503 at *3 (D.N.J. Sept. 9, 2014) (police may not use force on individual who has "completely given up resistance").

*Lankford v. City of Clifton Police Dep't*, 546 F. Supp. 3d 296, 313 (D.N.J. 2021); *Noble v. City of Camden*, 112 F. Supp. 3d 208, 228-29 (D.N.J. 2015) ("At the time Defendants acted, the law was clear that beating an unarmed suspect who was not resisting arrest violates the Fourth Amendment's prohibition against excessive force.").

In this case, viewing the facts in the light most favorable to Plaintiffs, as this Court must, a jury could conclude that Thompkins, who was unarmed and on the ground under the control of two officers,  was no longer such a threat to the officers that the use of a mixed-martial arts move

that Klobucher knew could cause injury was necessary in order to assist in handcuffing.  Even if Thompkins had not completely given up resistance, as Klobucher claims, she was still on ground in a fetal position while a second officer was present and placing handcuffs.  Under such circumstances, Klobucher is not entitled to qualified immunity at this stage of proceedings.  Based on the foregoing, summary judgment is denied with respect to Plaintiffs' Fourth Amendment excessive force claim.

### B. *Unlawful Arrest, Search, and Seizure*

Defendant moves for summary judgment as to Plaintiffs' claims for unlawful search, arrest, and seizure.[18] *See* Def.'s Br. (ECF No. 31) at 14-16.  "Plaintiffs do not contest the dismissal of the wrongful arrest claims found in Count I of" the FAC.  Pls.' Br. (ECF No. 37) at 2.  Based on the foregoing, any claims related to unlawful arrest, search, and seizure at Count 1 are dismissed with prejudice.

### C. *Battery and Loss of Consortium*

Defendant moves for summary judgment as to Plaintiffs' claims for battery and loss of consortium. *See* Def.'s Br. (ECF No. 31) at 16-17.  With respect to both claims, it is Defendant's position that because summary judgment should be granted on the excessive force claim, it must also be granted on both the battery and loss of consortium claims. *Id*.  However, as discussed *supra*, this Court has denied summary judgment on the excessive force claim, and therefore this Court will address both claims.

### 1. *Battery*

---

[18]  In the FAC, Plaintiffs assert that Thompkins was unlawfully arrested "and/or unconstitutional[ly] and unreasonabl[ly]" searched and seized. FAC (ECF No. 6) at ¶ 53.

"Although '[a] police officer may use reasonable force to prevent interference with the exercise of his authority or the performance of his duty,' he nevertheless 'may be held liable for assault and battery when a jury determines that the force used in making an arrest is unnecessary or excessive.'" *Thomas v. Liguori*, No. 2022 WL 2718718, at *7 (E.D. Pa. July 13, 2022) (quoting *Renk v. City of Pittsburgh*, 537 Pa. 68, 641 A.2d 289, 293 (Pa. 1994)). "The reasonableness of the force used in making the arrest determines whether the police officer's conduct constitutes an assault and battery." *Id*.

In this case, this Court's denial of summary judgment as to the excessive force claim necessitates denial of summary judgment as to the battery claim. If a jury determines that the force used during the course of this lawful arrest was unreasonable or excessive, it may also conclude that Klobucher is liable for battery. *See Thomas*, 2022 WL 2718718, at *7.

    2. *Loss of Consortium*

In the FAC, Plaintiffs assert that "[a]s a direct and proximate result of the actions of [Klobucher] and injuries sustained by Wife Plaintiff Barbara Ann Thompkins as detailed above, Husband Plaintiff Eric Klavon has suffered and will continue to suffer loss of consortium, spousal support, services, society, and companionship for which [Klobucher is] liable." FAC (ECF No. 6) at ¶ 85.

"Pennsylvania law provides that 'loss of consortium claims derive from the injured spouse's right to recover in tort law.'" *Richardson v. Solic. Montgomery Cnty., PA*, 2022 WL 990895, at *6 (E.D. Pa. Apr. 1, 2022) (quoting *Stoker v. Green, Tweed & Co.*, 2020 WL 4437113, at *16 (E.D. Pa. Aug. 3, 2020)). Instantly, there are two underlying torts that have survived summary judgment: 1) excessive force pursuant to Section 1983 and 2) battery.

However, it is well-settled that a Section 1983 claim "does not support a derivative claim for loss of consortium." *Le. L. v. Burlington Cnty.*, 2021 WL 6125777, at *4 (D.N.J. Dec. 28, 2021). Thus, a claim for loss of consortium cannot be based upon Plaintiffs' excessive-force claim. Nevertheless, a state-law battery claim may indeed provide the underlying basis for a loss of consortium claim, *see Williams v. Gilgallon*, 2016 WL 2892490, at *20 (M.D. Pa. May 17, 2016), and therefore summary judgment is denied with respect to Plaintiffs' loss-of-consortium claim.

### D. Motion to Strike Expert Report

Defendant has submitted an expert report from Christopher Boyle, whom he asserts is an expert in the field of law enforcement. *See* Expert Report (ECF No. 29-2). Plaintiffs have moved to strike this expert report pursuant to Federal Rule of Evidence 702. *See* Pls.' Br. (ECF No. 29-1). Defendant opposes Plaintiff's motion. *See* Def.'s Br. (ECF No. 40).

"Whether to permit expert testimony on a particular issue is left to the discretion of the trial court." *Bradley v. S.C. Boys, Inc.*, 2022 WL 3021140, at *2 (M.D. Pa. July 29, 2022). "Under the Federal Rules of Evidence, it is the role of the trial judge to act as a 'gatekeeper' to ensure that any and all expert testimony or evidence is not only relevant, but also reliable.". *Id*. "The Rules of Evidence embody a strong and undeniable preference for admitting any evidence which has the potential for assisting the trier of fact." *Id*.

Federal Rule of Evidence 702 provides, in relevant part:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

    (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

    (b) the testimony is based on sufficient facts or data;

    (c) the testimony is the product of reliable principles and methods; and

    (d) the expert has reliably applied the principles and methods to the facts of the case.

Federal Rule of Evidence 702.

Because this Court did not rely upon or utilize the expert testimony in any way in reaching a conclusion regarding summary judgment, the motion to strike expert is deferred to trial.

### IV. CONCLUSION

Based on the foregoing, Defendant's motion for summary judgment is granted in part and denied in part. Specifically, Defendant's motion is granted with respect to any excessive force claim based upon the Fourteenth Amendment, as well as Plaintiffs' claims for unlawful arrest, search, or seizure as outlined in Count 1 of the FAC. Defendant's motion for summary judgment is denied in all other respects. Furthermore, Plaintiffs' motion to strike Defendant's expert report is deferred to trial.

Appropriate Orders follow.

Dated: October 3, 2022.

BY THE COURT:

s/ Cynthia Reed Eddy
United States Magistrate Judge

cc:    Counsel of record
      *via electronic filing*